UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| DAWN GOHN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:24-CV-01589-NCC |
| | ) | |
| FRANK BISIGNANO,[1] | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying the application of Plaintiff Dawn Gohn ("Plaintiff") for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act, 42 U.S.C. §§ 401, *et seq*. Plaintiff has filed a brief in support of the Complaint (Doc. 13) and Defendant has filed a brief in support of the Answer (Doc. 15). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to Title 28 U.S.C. § 636(c) (Doc. 4).

## I. PROCEDURAL HISTORY

Plaintiff protectively filed her applications for DIB on April 26, 2022 (Tr. 186-89). Plaintiff was initially denied on September 14, 2022, and again on November 22, 2022 (Tr. 87-91, 98-102). She filed a Request for Hearing before an Administrative Law Judge ("ALJ") (Tr. 108). After a hearing, by decision dated November 27, 2023, the ALJ found Plaintiff not disabled (Tr.

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted, therefore, for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

7-24).  On October 8, 2024, the Appeals Council denied Plaintiff's request for review (Tr. 1-5). The ALJ's decision stands as the final decision of the Commissioner.

## II.  DECISION OF THE ALJ

The ALJ determined that Plaintiff meets the insured status requirements of the Social Security Act through June 30, 2025, and that Plaintiff has not engaged in substantial gainful activity since January 1, 2020, the alleged disability onset date (Tr. 12).  The ALJ found Plaintiff has the severe impairments of degenerative disc disease of the cervical, thoracic, and lumbar spine, and plantar fasciitis, but that no impairment or combination of impairments meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 12-13).  After careful consideration of the entire record, the ALJ determined Plaintiff has the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) with the following limitations: she can lift up to 20 pounds occasionally; she can lift/carry up to 10 pounds frequently; she can stand/walk for about 6 hours and sit for up to 6 hours in an 8 hour work day, with normal breaks; she can occasionally climb ramps or stairs, but never climb ladders, ropes or scaffolds; she can occasionally balance, stoop, kneel and crouch; she can frequently handle objects using the bilateral upper extremities; she must avoid concentrated exposure to excessive vibration and operational control of moving machinery; and she must avoid unprotected heights and exposure to hazardous machinery (Tr. 13).  The ALJ found that Plaintiff is unable to perform any past relevant work, but that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, including marker, router, and routing clerk (Tr. 17-19).  Thus, the ALJ concluded that Plaintiff has not been under a disability from January 1, 2020, through the date of the decision (Tr. 19).

2

### III.  LEGAL STANDARD

Under the Social Security Act, the Commissioner has established a five-step process for determining whether a person is disabled.  20 C.F.R. §§ 416.920, 404.1529.  "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled."  *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 590-91 (8th Cir. 2004)).  In this sequential analysis, the claimant first cannot be engaged in "substantial gainful activity" to qualify for disability benefits.  20 C.F.R. §§ 416.920(b), 404.1520(b).  Second, the claimant must have a severe impairment.  20 C.F.R. §§ 416.920(c), 404.1520(c).  The Social Security Act defines "severe impairment" as "any impairment or combination of impairments which significantly limits [claimant's] physical or mental ability to do basic work activities. . . ."  *Id*.  "'The sequential evaluation process may be terminated at step two only when the claimant's impairment or combination of impairments would have no more than a minimal impact on [his or] her ability to work.'"  *Page v. Astrue*, 484 F.3d 1040, 1043 (8th Cir. 2007) (quoting *Caviness v. Massanari*, 250 F.3d 603, 605 (8th Cir. 2001), citing *Nguyen v. Chater*, 75 F.3d 429, 430-31 (8th Cir. 1996)).

Third, the ALJ must determine whether the claimant has an impairment which meets or equals one of the impairments listed in the Regulations.  20 C.F.R. §§ 416.920(d), 404.1520(d).  If the claimant has one of, or the medical equivalent of, these impairments, then the claimant is per se disabled without consideration of the claimant's age, education, or work history.  *Id*.

Fourth, the impairment must prevent the claimant from doing past relevant work.  20 C.F.R. §§ 416.920(f), 404.1520(f).  The burden rests with the claimant at this fourth step to establish his or her RFC.  *Steed v. Astrue*, 524 F.3d 872, 874 n.3 (8th Cir. 2008) ("Through step four of this analysis, the claimant has the burden of showing that she is disabled.").  The ALJ

will review a claimant's RFC and the physical and mental demands of the work the claimant has done in the past.  20 C.F.R. § 404.1520(f).

Fifth, the severe impairment must prevent the claimant from doing any other work.  20 C.F.R. §§ 416.920(g), 404.1520(g).  At this fifth step of the sequential analysis, the Commissioner has the burden of production to show evidence of other jobs in the national economy that can be performed by a person with the claimant's RFC.  *Steed*, 524 F.3d at 874 n.3.

If the claimant meets these standards, the ALJ will find the claimant to be disabled.  "The ultimate burden of persuasion to prove disability, however, remains with the claimant."  *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000); *see also Harris v. Barnhart*, 356 F.3d 926, 931 n.2 (8th Cir. 2004) (citing 68 Fed. Reg. 51153, 51155 (Aug. 26, 2003)); *Stormo v. Barnhart*, 377 F.3d 801, 806 (8th Cir. 2004) ("The burden of persuasion to prove disability and to demonstrate RFC remains on the claimant, even when the burden of production shifts to the Commissioner at step five.").  Even if a court finds that there is a preponderance of the evidence against the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence.  *Clark v. Heckler*, 733 F.2d 65, 68 (8th Cir. 1984).  "Substantial evidence is less than a preponderance but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).

It is not the job of the district court to re-weigh the evidence or review the factual record de novo.  *Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007).  Instead, the district court must simply determine whether the quantity and quality of evidence is enough so that a reasonable mind might find it adequate to support the ALJ's conclusion.  *Davis v. Apfel*, 239 F.3d 962, 966 (8th Cir. 2001) (citing *McKinney v. Apfel*, 228 F.3d 860, 863 (8th Cir. 2000)).  Weighing the

evidence is a function of the ALJ, who is the fact-finder. *Masterson v. Barnhart*, 363 F.3d 731, 736 (8th Cir. 2004). Thus, an administrative decision which is supported by substantial evidence is not subject to reversal merely because substantial evidence may also support an opposite conclusion or because the reviewing court would have decided differently. *Krogmeier*, 294 F.3d at 1022.

## IV.  DISCUSSION

The Court accepts the facts as set forth in the parties' respective statements of fact and responses. The Court will cite specific portions of the transcript as needed to address the parties' arguments. In her appeal of the Commissioner's decision, Plaintiff raises three issues. First, Plaintiff argues the ALJ failed to properly evaluate step two of the sequential evaluation by failing to recognize fibromyalgia as a severe impairment (Doc. 13 at 3-7). Second, Plaintiff argues that the ALJ failed to develop the record fully and fairly (Doc. 13 at 8-12). Third, Plaintiff argues the ALJ failed to properly evaluate medical opinion evidence (Doc. 13 at 12-14). The Commissioner responds that substantial evidence supports the RFC, the ALJ properly found fibromyalgia was non-severe, and properly evaluated medical opinion evidence (Doc. 15). Because the Court agrees that the ALJ's decision fails to develop the record fully, the Court will substantially address that issue. For the purpose of clarity on remand, the Court will briefly address the first issue as well.

### A.  Step Two Evaluation

Plaintiff argues the ALJ erred at step two of the sequential evaluation by failing to recognize fibromyalgia as a severe impairment, and failing to evaluate how Plaintiff's symptoms, in the context of fibromyalgia, affect her RFC, violating SSR 12-2p (Doc. 13 at 3-7). The Commissioner responds that Plaintiff has the burden to establish an impairment is severe (Doc.

15 at 4-6).  The Commissioner further argues that even if the ALJ should have found

fibromyalgia was a severe impairment, there is no harm because the ALJ continued throughout

the sequential evaluation process and clearly discussed Plaintiff's pain and other symptoms,

leaving no basis for remand (Doc. 15 at 4-6).  The Court agrees with the Commissioner.

As discussed above, at step two the ALJ must determine "whether the claimant has an

impairment or combination of impairments that significantly limits the claimant's ability to

perform basic work activities."  *Page*, 484 F.3d at 1043; *accord* 20 C.F.R. §§ 404.1520(a)(4)(ii),

404.1521m 416.920(a)(4)(ii).  If an impairment has "no more than a minimal effect on the

claimant's ability to work, then it does not satisfy the requirement of step two."  *Kirby v. Astrue*,

500 F.3d 705, 707 (8th Cir. 2007).  "It is the claimant's burden to establish that [the] impairment

or combination of impairments are severe."  *Id.*  Furthermore, "[s]everity is not an onerous

requirement for the claimant to meet, but it is also not a toothless standard, and we have upheld

on numerous occasions the Commissioner's finding that a claimant failed to make this showing."

*Id.* at 708 (internal citations omitted).

At step two the ALJ considered Plaintiff's degenerative disc disease of the cervical,

thoracic, and lumbar spine, and plantar fasciitis to be severe impairments, and determined these

impairments significantly limit Plaintiff's ability to perform basic work activities (Tr. 12-13).

The ALJ did not mention fibromyalgia at all in his opinion.

A review of the record reveals little more than a one-word diagnosis of fibromyalgia on

one physician's report.  Notably, Plaintiff did not allege fibromyalgia in her application for

benefits or at the hearing (Tr. 37).  *See Dunahoo v. Apfel*, 241 F.3d 1033, 1039-40 (8th Cir.

2001); *see also Gregg v. Barnhart*, 354 F.3d 710, 713 (8th Cir. 2003) ("[A]n ALJ is not obliged

'to investigate a claim not presented at the time of the application for benefits and not offered at

the hearing as a basis for disability.'" (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)). The Court located the word "fibromyalgia" seven times in the approximately 1,300 page record, with two of those references noting Plaintiff's medical history including "**no** diagnosis of fibromyalgia" and one reference noting that some symptoms seem to correlate with a "fibromyalgia picture" (Tr. 435, 442, 446). The single word "fibromyalgia" was listed a few times related to a May 2, 2023 visit with Sarah E. Sbarra, APRN-CNP, once under "diagnosis," once under "assessment/plan" with a note to continue baclofen and tramadol, and once on an after visit summary (Tr. 1155, 1158, 1169). Finally, a report completed by Sbarra on August 11, 2023, states Plaintiff's diagnoses are "Muscle pain/fibromyalgia LBP, IgA Def" (Tr. 1269). The Commissioner asserts and the record confirms Sbarra's diagnosis came three years after Plaintiff's alleged onset date and the corresponding examination note contains no exam findings supportive of fibromyalgia (Doc. 15 at 4, Tr. 1158).

Although Plaintiff argues the ALJ failed to appropriately assess fibromyalgia pursuant to SSR 12-2p,[2] Plaintiff fails to point to specific evidence in the record that Plaintiff would meet

---

[2] The SSR 12-2p assessment has been described as follows.

For cases involving fibromyalgia, Social Security Ruling ("SSR") 12-2p provides guidance on how to "develop evidence to establish that a person has a medically determinable impairment (MDI) of fibromyalgia" and how to "evaluate fibromyalgia in disability claims." *See* SSR 12-2p, 2012 WL 3104869, at *1 (July 25, 2012). SSR 12-2p explains that fibromyalgia is "a complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." *Id.* at *2. SSR 12-2p further explains that to establish a medically determinable impairment of fibromyalgia, a claimant must have a physician's diagnosis of fibromyalgia and evidence to satisfy one of two sets of criteria, which are generally based on criteria from the American College of Rheumatology ("ACR"). *Id.* The "1990 ACR Criteria" require (1) a history of widespread pain, (2) at least eleven positive tender points on physical examination; and (3) evidence that other disorders that

7

the requisite criteria.  "[A] diagnosis of fibromyalgia is insufficient to establish it as a medically determinable impairment."  *Buol v. Saul*, No. 19-CV-52-LRR-KEM, 2020 WL 2172300, at *4 (N.D. Iowa Apr. 20, 2020), *report and recommendation adopted sub nom. Buol v. Comm'r of Soc. Sec.*, No. 19-CV-52-LRR, 2020 WL 2174445 (N.D. Iowa May 5, 2020) (citing Social Security Ruling (SSR) 12-2p, 77 Fed. Reg. 43640, 43641 (July 25, 2012)).  In *Buol*, the ALJ "noted there was no evidence that Buol met the tender-point test or suffered widespread pain for more than three months."  *Id*.  Even though the ALJ in *Buol* mistakenly believed fibromyalgia was only mentioned once in the record, the error was harmless because "the treatment records [Plaintiff] relies on do not contain the objective evidence of fibromyalgia necessary to establish it as a medically determinable impairment."  *Id*.

Here, the Commissioner asserts the record is void of any findings of at least eleven positive tender points on physical examination to meet the 1990 criteria (Doc. 15 at 5).  The Court's own review of the record revealed findings of at most three tender points (Tr. 436), and no tender points on many exams, even as late as August of 2022 (Tr. 70, 71, 78, 79, 929).  The Commissioner argues Plaintiff also fails to meet the 2010 criteria because co-occurring

---

could cause the symptoms or signs were excluded. *Id.* at *2-*3. The "2010 ACR Preliminary Diagnostic Criteria" require (1) a history of widespread pain, (2) reported manifestations of six or more fibromyalgia symptoms, signs, or co-occurring conditions, and (3) evidence that other disorders that could cause the symptoms or signs were excluded. *Id* at *3. SSR 12-2p further states that if there is insufficient evidence to determine whether a person has the medically determinable impairment of fibromyalgia, the Commissioner may recontact the person's treating source, request additional existing records, or request additional information from the claimant or others. *Id.* at *4.

*Haynes v. Saul*, No. 1:19-CV-146-SPM, 2020 WL 5569984, at *4 (E.D. Mo. Sept. 17, 2020).

conditions cannot be excluded.  This is so because the ALJ found Plaintiff had other severe impairments that corresponded with Plaintiff's reports of pain (Tr. 12).

Moreover, Eighth Circuit "precedent indicates that the failure to list a specific impairment at step two is not an error unless the impairment is 'separate and apart' from the other listed impairments."  *Gregory v. Comm'r, Soc. Sec. Admin.*, 742 F. App'x 152, 156 (8th Cir. 2018) (citing *Gragg v. Astrue*, 615 F.3d 932, 939 (8th Cir. 2010)).  In this case, the "evidence" of fibromyalgia cited by Plaintiff is part of the record establishing Plaintiff's other impairments.  There is nothing to differentiate any purported symptoms brought on by Plaintiff's severe impairments from symptoms of fibromyalgia, weighing against a determination that, in this case, it should be considered separate and apart from degenerative disc disease of the cervical, thoracic, and lumbar spine, and plantar fasciitis.  The Court was unable to locate any records attributing pain or tenderness specifically to fibromyalgia.

The Court is cognizant that remand has been required in cases where fibromyalgia was diagnosed and subsequently ignored by the ALJ, but those cases are distinguishable.

> Courts have often found that an ALJ's failure to properly analyze whether fibromyalgia is a severe impairment may require remand, particularly where that failure may have affected later steps of the five-step analysis.  *See Garza v. Barnhart*, 397 F.3d 1087, 1089 (8th Cir. 2005) (remanding where the ALJ misunderstood fibromyalgia and did not find it to be a severe impairment; noting that it "appears the ALJ's misunderstanding of fibromyalgia affected the ALJ's RFC findings, and her related hypothetical to the VE"); *Berry v. Colvin*, No. 5:16-CV-01500, 2016 WL 7741739, at *11-*12 (S.D. W. Va. Dec. 22, 2016), *report and recommendation adopted*, No. 5:16-CV-01500, 2017 WL 127463 (S.D. W.Va. Jan. 12, 2017) (remanding where, despite "numerous references to pain and tenderness related to fibromyalgia" in the medical records, "the ALJ did not address Claimant's medically determinable impairment of fibromyalgia, did not assess the severity of the condition, and did not discuss the functional impact of Claimant's fibromyalgia"; noting that "the ALJ's failure to expressly address and rate the severity of Claimant's fibromyalgia cannot possibly be viewed as harmless given that the Court is unable to determine whether the ALJ properly

considered the functional impact of Claimant's fibromyalgia at the subsequent steps of the sequential evaluation"); *Olmstead v. Saul*, No. 18-CV-985-MJR, 2020 WL 1284014, at *3-*4 (W.D.N.Y. Mar. 18, 2020) (remanding where the ALJ did not evaluate whether the plaintiff's fibromyalgia was a medically determinable impairment under the 2010 ACR Preliminary Diagnostic Criteria, despite the fact that there was evidence in the record that "could very well support a finding that the plaintiff's fibromyalgia constitutes a medically determinable impairment" under those criteria).

*Haynes*, 2020 WL 5569984, at *5. In *Haynes*, the record showed the plaintiff was repeatedly diagnosed with fibromyalgia by multiple treatment providers, frequently complained of pain and other symptoms related to fibromyalgia, was regularly treated for fibromyalgia with medications including Lyrica and Cymbalta, it was listed as a diagnosis on her primary care physician's medical source opinion as a basis for his opinion, and she alleged fibromyalgia as a basis for her disability. *Id*. at *3. The court in *Haynes* determined remand was necessary because despite all of this, the ALJ's decision contained no mention of fibromyalgia, did not address whether it was a severe impairment, and did not discuss it in review of the medical records or the primary care physicians opinion. *Id*. at *5. Here, although a treating physician listed fibromyalgia as a diagnosis, there were virtually no other substantive references to fibromyalgia at all.

Furthermore, the ALJ thoroughly considered Plaintiff's medical records and subjective complaints of pain when considering the effects of her other severe impairments at later steps of the evaluation. Plaintiff fails to point to anything specifically related to fibromyalgia that the ALJ did not discuss, which would render any potential error harmless. *See Kendrick B. v. Kijakazi*, No. 21-CV-0068 (JFD), 2022 WL 2670052, at *4 (D. Minn. July 11, 2022) ("Numerous district courts . . . in the Eighth Circuit, have held that an ALJ's failure to consider an impairment at step two is harmless error if the ALJ considered the effects of the impairment at step two or at a later step of the evaluation process.").

10

Although the Court does not find the ALJ erred in the step two analysis, and finds any alleged error would be harmless, the Court notes that it is advisable on remand that the ALJ perform the assessment of fibromyalgia as outlined in SSR 12-2p for the purpose of clarity.

## B. RFC and Duty to Develop the Record

Plaintiff argues that the ALJ failed to develop the record fully and fairly because there is no medical opinion evidence to support the ALJ's finding that Plaintiff can sustain light work with her foot impairment and fibromyalgia[3] (Doc. 13 at 8-12). The Commissioner responds that the ALJ's reliance on prior administrative medical findings that were rendered before the record was complete was appropriate, the ALJ was not required to rely on a particular medical opinion, and the record shows the ALJ considered all the evidence when determining the RFC (Doc. 15 at 6-10). The Court agrees that the ALJ failed to develop the record fully and fairly.

The RFC is the most a claimant can still do in a work setting despite the claimant's physical or mental limitations. 20 C.F.R. § 404.1545(a)(1); *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011). An ALJ determines a claimant's RFC based on all the relevant evidence, including medical records, observations of treating physicians and others, and the claimant's own description of her limitations. *Page*, 484 F.3d at 1043; *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995). Although the ALJ bears the primary responsibility for assessing a claimant's RFC based on all relevant evidence, a claimant's RFC is a medical question. *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2000); *Singh v. Apfel*, 222 F.3d 448, 451 (8th Cir. 2000); *Hutsell v. Massanari*, 259 F.3d 707, 711-12 (8th Cir. 2001). Because it is a medical question, an ALJ's RFC assessment must be supported by some medical evidence of the claimant's ability to

---

[3] Plaintiff's arguments based on lack of consideration of fibromyalgia will not be considered, as the Court has found the ALJ did not err in neglecting to assess fibromyalgia.

function in the workplace. *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016); *Cox*, 495 F.3d at 619. An ALJ may not draw upon his or her own inferences from medical reports, *Nevland v. Apfel*, 204 F.3d 853, 858 (8th Cir. 2000), and the claimant bears the burden of establishing RFC. *Mabry v. Colvin*, 815 F.3d 386, 390 (8th Cir. 2016). Further, "there is no requirement that an RFC finding be supported by a specific medical opinion." *Hensley v. Colvin*, 829 F.3d 926, 932 (8th Cir. 2016). All that is required is that the RFC be supported by some medical evidence. *Id*.

Plaintiff argues that the ALJ determined Plaintiff had the RFC to do light work,[4] and specifically, stand and/or walk six hours in every eight-hour workday without input from a medical professional as to her ability to do so with plantar fasciitis and fibromyalgia (Tr. 13). The Commissioner responds that the ALJ properly relied on prior administrative findings of Dr. Clifford Costley and Dr. Donna McCall, who fully considered Plaintiff's complaints and medical records reflecting severe foot pain, and opined Plaintiff could stand and/or walk for about six hours in an eight-hour workday (Tr. 69, 77).

It is true that the ALJ may rely on prior administrative medical findings of non-treating physicians, *Bauer v. Kijakazi*, No. 4:21-CV-176-MTS, 2022 WL 1136140, at *5 (E.D. Mo. Apr. 18, 2022), and it is not fatal that the opinions were rendered prior to the ALJ determining

---

[4] According to Social Security Administration regulations

> [l]ight work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds .... [A] job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b). Social Security Ruling 83-10p states "the full range of light work requires standing or walking, off and on, for a total of approximately 6 hours of an 8-hour workday." 1983 WL 31251, at *6 (S.S.A. Jan. 1, 1983).

Plaintiff has the severe impairment of plantar fasciitis.  *See Walker v. Kijakazi*, No. 6:21-CV-3235-NKL, 2022 WL 3036639, at *6 (W.D. Mo. Aug. 1, 2022).  The fatal flaw is that the ALJ's assessment is not supported by this opinion evidence, because the ALJ determined these opinions were unpersuasive.  *Fisher v. Kijakazi*, No. 4:20 CV 1054 CDP, 2022 WL 873347, at *6 (E.D. Mo. Mar. 24, 2022) (the "assessment was not supported by opinion evidence because she determined that the sole opinion, the State's agency consultant's opinion that [Plaintiff] was able to perform medium work, was unpersuasive because it was not supported by the record.").  He determined the opinions were inconsistent with exams noting tenderness of her spine and feet, and reduced strength and range of motion of her spine and extremities (Tr. 17).  The ALJ's evaluation of these opinions follows.

> The undersigned considered the prior administrative findings of state agency medical consultants Dr. Clifford Costley and Dr. Donna McCall, who found the claimant can occasionally lift/carry 25 pounds and frequently lift/carry 25 pounds, can frequently climb ramps or stairs, can occasionally climb ladders, ropes or scaffolds, and avoid concentrated exposure to vibration and hazards (Exhibits 2A; 4A). The undersigned does not find their findings persuasive. Their findings were well supported by references to objective medical findings. **However, their findings were not consistent with exams noting tenderness of her spine and feet, and reduced strength and range of motion of her spine and extremities. Such evidence was consistent with further exertional and manipulative limitations.**

(*id*.) (emphasis added).  The ALJ then included in the RFC greater limitations with respect to lifting and carrying, climbing ramps, stairs, ladders, ropes or scaffolds (Tr. 13).  The ALJ is inexplicably silent as to the finding that Plaintiff can stand/walk for about six hours in an eight-hour workday, does not assess it separately or find the opinion partially persuasive, and nevertheless adopts that finding in the RFC. The ALJ provides no explanation why greater limitations were warranted as to some aspects but not others, or how the evidence supports the RFC assessment with respect to standing and walking.  In light of the ALJ's determination that

13

plantar fasciitis is a severe impairment, and that additional limitations were warranted specifically relating to her feet, the Court is left unable to determine whether the ALJ's determination is supported by substantial evidence.

The ALJ's determination is not supported by other opinion evidence in the record either, as the ALJ also found unpersuasive the only other medical opinion evaluated.  Plaintiff's treating physician, Sara Sbarra, NP, opined that Plaintiff can only sit, stand, and walk for less than two hours a day and requires a sit/stand option (Tr. 17).  The ALJ found Sbarra's opinion to be unsupported and wholly inconsistent with the medical evidence (*id*.).

Here, although the ALJ reviewed medical evidence and Plaintiff's subjective complaints, the ALJ did not analyze the evidence as it relates to Plaintiff's ability to walk or stand for six hours of an eight-hour workday.  "Discounting a claimant's statements is not equivalent to demonstrating by medical evidence that a claimant has the RFC to perform certain work-related activities." *Fisher*, 2022 WL 873347, at *6 (citing *Estabrook v. Apfel*, 14 F. Supp. 2d 1115, 1122 (S.D. Iowa 1998)).  The ALJ is required to "discuss and describe 'how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Id.* (citing *Sieveking v. Astrue*, Case No. 4:07 CV 986 DDN, 2008 WL 415674, at *9 (E.D. Mo. Sept. 2, 2008)); S.S.R. 96-8p, 1996 WL 374184, at *7 (July 2, 1996).  The ALJ failed to do so here.

Additionally, review of the record shows little evidence of Plaintiff's functional abilities to support the ALJ's assessment.  As noted above, the assessment was not supported by opinion evidence because she determined the state agency consultants' opinions were unpersuasive and likewise found the treating nurse practitioner's opinion unpersuasive (Tr. 17).  The medical evidence cited by the ALJ regarding Plaintiff's ability to walk with a normal gait, have normal

range of motion, intact strength and sensation, heel or toe walk, or squat, does not show the ability to stand/walk for six hours in an eight-hour workday (*id*.).  The ALJ discusses one exam from 2021 where Plaintiff stated she could walk two miles, and cites other evidence she sporadically returned to work at various points during the relevant period (Tr. 16).  However, a multitude of cited evidence shows persistent and ongoing foot pain.  Plaintiff testified she was diagnosed with plantar fasciitis, it has been difficult for her to walk since 2020, and that she does sometimes go into work, but only "about twice a week for maybe three, four hours at a time" (Tr. 37, 39).  She also testified she can stand for no more than an hour and her walking is very limited, so much so that she cannot go to the grocery store, or if she did go to the grocery store, she would suffer that evening and for the next several days (Tr. 44).  She testified that if he had to stand for an hour frequently, she would not be able to continue to stand for that duration repeatedly (Tr. 50).  Additionally, because her plantar fasciitis affects both feet from her toes to her heels, the doctor told her surgery could not repair her feet (Tr. 54).

The evidence arguably both supports and detracts from the ALJ's determination regarding standing and walking.  Even where the record is "mixed" as to Plaintiff's limitations due to impairments and would "normally require that we affirm under the substantial evidence standard," the Eighth Circuit has found the record "fatally lacking" where there is "no reliable evidence providing a basis for the specific conclusion that [Plaintiff] can stand or walk for 6 hours in an 8-hour workday." *Noerper v. Saul*, 964 F.3d 738, 746 (8th Cir. 2020)).  The only assessments regarding this specific conclusion were deemed unpersuasive by the ALJ and therefore do not support the conclusion.

"Well-settled precedent confirms that the ALJ bears a responsibility to develop the record fairly and fully, independent of the claimant's burden to press his case." *Snead v. Barnhart*, 360

15

F.3d 834, 838 (8th Cir. 2004) (citing *Nevland v. Apfel,* 204 F.3d 853, 858 (8th Cir. 2000)).

"[T]he ALJ's duty to develop the record 'exists alongside the claimant's burden to prove [her]

case.'" *Fisher*, 2022 WL 873347, at *7 (quoting *Noerper*, 964 F.3d at 747). Further,

> "This duty is not never-ending, and an ALJ is not required to disprove every
> possible impairment." *McCoy v. Astrue*, 648 F.3d 605, 612 (8th Cir. 2011).  But
> the ALJ is required to order medical examinations and tests when the medical
> records presented to her do not furnish sufficient evidence to determine whether
> the claimant is disabled. *See Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir.
> 1985). *Cf. McCoy*, 648 F.3d at 612. An ALJ need not "obtain from medical
> professionals a functional description that wholly connects the dots between the
> severity of [a claimant's impairments] and the precise limits on a claimant's
> functionality. Something, however, is needed." *Noerper*, 964 F.3d at 746.

*Id.*  Here, although the record contains evidence from several sources, "it did not provide

sufficient medical evidence of [Plaintiff's] functional abilities in light of [her] foot impairments."

*Fisher*, 2022 WL 873347, at *7.  As in *Fisher*, Plaintiff's "functional abilities in light of

[Plaintiff's] foot impairments were crucial to assessing [her] RFC. Because the record did not

contain sufficient medical evidence showing [Plaintiff's] functional abilities, the ALJ failed to

fully develop the record."  2022 WL 873347, at *7 (the ALJ's "failure to support his conclusion

that [Plaintiff] is able to perform light work, and the absence of evidence translating the medical

evidence and subjective complaints into functional limitations," the Court cannot determine the

permissibility of the RFC determination.) (modified).  The Court concludes "the absence of

evidence to suggest the accuracy or propriety of the 6-hour limitation demonstrates that the ALJ

did not fulfill the duty to fully develop the record." *Noerper*, 964 F.3d at 747.

The case will be remanded to the Commissioner with instructions to more fully develop

and evaluate the record with respect to the functional limitations imposed by Plaintiff's plantar

fasciitis.  The *Fisher* court noted clear and specific directions the ALJ should follow in these

circumstances:

16

The Commissioner shall obtain and provide the parties an opportunity to submit medical evidence that addresses Plaintiff's ability to function in the workplace, which may include contacting Plaintiff's health care providers to clarify her limitations and restrictions in order to ascertain what level of work, if any, she is able to perform." *See Coleman v. Astrue*, 498 F.3d 767 (8th Cir. 2007); *Smith v. Barnhart*, 435 F.3d 926, 930-31 (8th Cir. 2006)).  Upon the receipt of additional evidence, the ALJ must reconsider the record as a whole and reassess Plaintiff's RFC. Such reassessed RFC must be based on some medical evidence in the record and shall be accompanied by a discussion and description of how the evidence supports each RFC conclusion. *Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007).

2022 WL 873347, at *7.

Because remand is required for further development of the record, the Court will not address Plaintiff's remaining argument.  *See, e.g., Hirner v. Saul*, No. 2:21-CV-38 SRW, 2022 WL 3153720, at *10 (E.D. Mo. Aug. 8, 2022).

## V.  CONCLUSION

For the foregoing reasons, the Court finds that the ALJ's decision is not supported by substantial evidence.

Accordingly,

**IT IS HEREBY ORDERED** that this action is **REVERSED AND REMANDED** to the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) for further consideration in accordance with this Memorandum and Order.

A separate judgment shall be entered incorporating this Memorandum and Order.

Dated this 31st day of March, 2026.

                    /s/ Noelle C. Collins
                    NOELLE C. COLLINS
                    UNITED STATES MAGISTRATE JUDGE